IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHARLES QUACKENBUSH,

    Plaintiff,

  v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

No. C 17-01858 WHA

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this social security appeal, this order holds that the administrative law judge improperly discounted the weight of a treating physician's opinion. Accordingly, plaintiff's motion for summary judgment is **GRANTED IN PART** and the Acting Commissioner's cross-motion for summary judgment is **DENIED**. This action is **REMANDED**.

## STATEMENT

**1. PROCEDURAL HISTORY.**

On July 3, 2013, plaintiff Charles Quackenbush applied for disability insurance benefits alleging he had been unable to work since June 15, 2013 (AR 179–84). Plaintiff subsequently filed for supplemental security income on August 5, 2013. Plaintiff was insured through March 30, 2018. Both of his applications were denied initially and upon reconsideration (AR 107, 115). An administrative hearing was timely requested (AR 122).

On May 27, 2015, plaintiff had a hearing before ALJ David Mazzi (AR 30–44). The ALJ rendered a decision on November 13, 2015, finding that plaintiff was not disabled (AR 13–29). Plaintiff requested administrative review (AR 5). The Appeals Council denied the request (AR 1–4). Plaintiff filed the instant action on April 3, 2017, seeking judicial review pursuant to Section 405(g) of Title 42 of the United States Code. The parties now cross-move for summary judgment.

**2.     TESTIMONY AT THE ADMINISTRATIVE HEARING.**

At the hearing before the ALJ, plaintiff testified that he underwent neck surgery in 2006. He testified that taking aspirin and meditating enabled him to get through a work day during his last employment. Plaintiff testified that he experienced numbness in his hands and arms which limited his ability to grasp objects. Plaintiff also testified that he had problems using his fingers to manipulate small objects, which had prevented him from passing an employment test for an electronics job.

Plaintiff further testified that his heavy use of aspirin (1,300 milligrams daily) in conjunction with his thyroid medication caused him daily nausea and fatigue. He also stated he experienced lightheadedness, disorientation, and had difficulty focusing because of his medication. He testified that he has been taking the medications causing these ailments, in one form or the other, since his neck surgery in 2006. He testified that because of these ailments he cannot imagine himself being able to work on a regular basis in order to maintain a job.

A vocational expert, Joel Greenberg, testified that plaintiff's previous work experience in the janitorial, construction, and grounds-keeping fields did not carry over skills that translated into sedentary jobs. Furthermore, he testified that plaintiff's skills would not directly transfer into light jobs, and that unskilled jobs at the sedentary level require frequent manipulation.

**3.     MEDICAL EVIDENCE.**

The medical evidence was summarized in the ALJ's decision (AR 14–22). This order will also review both plaintiff's self-reported symptoms and the findings of each physician who examined him.

In September 2006, an MRI report showed that plaintiff had significant cord compression at the level C5-6 and C6-7 (AR 307). The MRI also showed evidence of myelomalacia at C5-6. Accordingly, plaintiff had cervical spine surgery wherein three of his vertebrae were fused together. He now has eight screws in his neck.

### A. Dr. Lyman Bo Greaves, M.D.

Dr. Greaves, a member of the Santa Rosa Community Health Center where plaintiff received care starting 2010, has treated plaintiff since 2013, with at least eleven office visits. In August 2013, Dr. Greaves filled out a medical source statement (AR 354). In that statement, Dr. Greaves diagnosed plaintiff with (1) neck pain, (2) low back pain, (3) fatigue, and (4) depression. Dr. Greaves stated that plaintiff is not a malingerer and his impairments can be expected to last for more than twelve months.

Dr. Greaves further opined that plaintiff could stand and walk for four hours, and sit for eight hours, out of an eight-hour work day; could lift ten pounds frequently and twenty pounds occasionally; could occasionally twist or crouch; and could frequently climbs stairs. He also concluded that plaintiff could never climb ladders, and could rarely stoop. Dr. Greaves further opined that plaintiff would need a job that would allow him to shift positions at will. Dr. Greaves opined that although plaintiff had no restriction in using his hands or arms to work, plaintiff's fine manipulation was limited to ten percent of an eight-hour workday (AR 355).

In his medical source statement, Dr. Greaves also opined that plaintiff suffers from depression, anxiety, and post-traumatic stress disorder, which affect his physical condition. Additionally, he opined that plaintiff's symptoms would frequently interfere with his attention and concentration in a workday, and that plaintiff would miss more than four workdays a month. Lastly, Dr. Greaves concluded that the functional limitations he assessed have been present since December 2006.

In May 2014, Dr. Greaves ordered an x-ray of plaintiff's neck. The x-ray raised the possibility of loose hardware and a failed fusion at level C7 (AR 408). Subsequently, Dr. Greaves prescribed plaintiff Tramadol. On May 12, following a year of treatment consisting of seven office visits, Dr. Greaves supplemented his medical source statement with a letter where

he opined that plaintiff was "suffering from severe, disabling neck pain with radiation" (AR 351).

### B.     Dr. Steven E. Gerson, D.O.

In December 2013, Dr. Steven Gerson examined plaintiff at the request of the Department of Social Services (AR 343). According to Dr. Gerson's report, plaintiff's chief complaint was back pain, followed by abdominal symptoms. Dr. Gerson's five-page report revealed that plaintiff told him that aspirin gives him mild relief from his back symptoms (AR 344).

Dr. Gerson diagnosed plaintiff with a history of (1) herniated disc of the back with ongoing back pain, (2) bulged discs of the neck, status post surgery with ongoing neck pain, (3) chronic abdominal symptoms, and (4) arthritis. In his report, Dr. Gerson opined that plaintiff could stand and walk for six hours and sit for more than six hours out of an eight-hour work day, and could lift fifteen pounds frequently and thirty pounds occasionally. In terms of postural capacities, Dr. Gerson opined that plaintiff could occasionally stoop/bend, kneel, squat, and climb ladders and/or stairs (AR 347).

Dr. Gerson's physical examination of plaintiff showed a supple neck, full strength hand grasp, and a gait with a mild limp. Dr. Gerson's report included his observation that plaintiff was able to extend and rotate both of his arms and hands in multiple directions with a good range of motion, without any obvious pain or distress noted. According to Dr. Gerson's report, although plaintiff had no limitation in either reaching or fingering, his ability to handle objects would frequently be limited due to his hands.

### C.     Dr. Les P. Kalman, M.D., Psy.D.

In September 2013, Dr. Les P. Kalman conducted a psychiatric evaluation of plaintiff (AR 330). Dr. Kalman diagnosed plaintiff with, among other things, post-traumatic stress disorder with depressive mood and persistent depressive mood disorder. She opined, however, that based on her evaluation plaintiff is able to (1) interact with supervisors and co-workers; (2) deal with the public; (3) understand, remember and carry out detailed, but uncomplicated job

instructions; (4) maintain attention, concentration and memory; and (5) withstand the stress and pressures associated with daily work activities (AR 333).

**ANALYSIS**

**1.  LEGAL STANDARD.**

A decision denying disability benefits must be upheld if it is supported by substantial evidence and free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "more than a scintilla," but "less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ibid.* A reviewing district court must "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities;" thus, where the evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld. *Ibid.*

The claimant has the burden of proving disability. *Id.* at 1040. Disability claims are evaluated using a five-step inquiry. 20 C.F.R. § 404.1520. In the first four steps, the ALJ must determine: (i) whether the claimant is working, (ii) the medical severity and duration of the claimant's impairment, (iii) whether the disability meets any of those listed in Appendix 1, Subpart P, Regulations No. 4, and (iv) whether the claimant is capable of performing his or her previous job; step five involves a determination of whether the claimant is capable of making an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(i)–(v). In step five, "the burden shifts to the Secretary to show that the claimant can engage in other types of substantial gainful work that exists in the national economy." *Andrews*, 53 F.3d at 1040.

**2.  THE ALJ'S FIVE-STEP ANALYSIS.**

In his decision, the ALJ found at step one of the sequential evaluation process that plaintiff had not engaged in substantial gainful activity since June 15, 2013 (AR 15).

At step two, the ALJ reviewed plaintiff's medical records and found that his impairments had more than a minimal affect on his ability to work, such that they were severe (AR 15).

The ALJ found plaintiff's degenerative disc disease and status-post cervical spine surgery in 2006 were severe impairments. The ALJ considered plaintiff's alleged hemochromatosis, hypothyrodism, hyperlipidemia, cirrhosis, and mental impairments to be non-severe.

At step three, the ALJ found that none of plaintiff's impairments or a combination of impairments met or equaled any impairment that would warrant a finding of disability without considering age, education, or work experience (AR 19). *See* 20 C.F.R. Pt. 404, Subpart P, App. 1.

Between steps three and four, the ALJ assessed that plaintiff had the residual functional capacity to perform the full range of light work (AR 19–22). Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and also includes "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

At step four, the ALJ found that plaintiff's residual functional capacity precluded him from performing his past relevant work (AR 23).

At step five, after reviewing plaintiff's age (fifty), education, work experience, and residual functional capacity, the ALJ found that plaintiff was able to perform other jobs that existed in significant numbers in the national economy (AR 23). The ALJ thus concluded that plaintiff was not disabled.

**3. THE ALJ ERRED IN HIS TREATMENT OF DR. GREAVES' OPINION.**

Plaintiff argues that the ALJ improperly discounted the opinion of treating physician Dr. Greaves in his analysis of plaintiff's RFC. Plaintiff's contention is that the ALJ did not give specific and legitimate reasons for assigning less than controlling weight to Dr. Greaves' opinion. This order agrees.

If an ALJ gives a treating physician's opinion less than controlling weight, the ALJ must comply with two requirements. *First*, the ALJ must consider the factors specified in Section 404.1527(c)(2) of Title 20 of the Code of Federal Regulations — including the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability and consistency of the opinion, and the specialization of the

6

physician — in determining what weight to give that opinion. Failure to consider these factors constitutes reversible error. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

*Second*, the ALJ must give reasons for rejecting a treating physician's opinion. *Ibid*. The legal standard those reasons must satisfy depends on whether or not a treating physician's opinion is contradicted by another physician. Here, Dr. Greaves' opinion was contradicted by Dr. Gerson's opinion in several respects. To give just one example, although Dr. Greaves opined that plaintiff's fine manipulation was severely restricted, Dr. Gerson noted no such restriction. When a treating physician's opinion is contradicted by another physician's opinion, the ALJ need only give specific and legitimate reasons that are supported by substantial evidence to reject the treating physician's opinion. *Ibid*. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation and quotation omitted).

The ALJ failed to meet that burden here. While the ALJ's decision did review the medical evidence, in discussing Dr. Greaves' opinion he concluded only that (AR 22):

> I have afforded Dr. Greaves' opinion weight only to the extent consistent with the residual functional capacity finding based on the weight of the evidence record. To the extent that Dr. Greaves opined that the claimant is able to lift 20 pounds, consistent with light work, I find the assessment credible; however, to the extent of additional assessed limitations inconsistent with the residual functional capacity finding, I do not adopt such limitations. The weight of the evidence and the relevant factors discussed herein belie such limitations. Aside from the fact that Dr. Greaves specified that he had seen the claimant for only three months, he assessed that the limitations were present since 2006. Based on the relevant factors and the record as a whole, I have not adopted that assessment.

The ALJ offered no additional explanation for why he did not adopt the functional limitations in Dr. Greaves' medical source statement. The ALJ's argument seems to have been that Dr. Greaves, having treated plaintiff for only three months, could not have rendered an opinion for a time outside that treatment time. *First*, this is a non sequitur because physicians frequently review a patient's past medical records and render opinions regarding the likely length of a patients existing limitations. Indeed, the social security administration itself relies

7

upon the opinion of its medical advisors who without physically examining applicants do just that.

By way of context, Dr. Greaves was a physician at Santa Rosa Health Community Center where plaintiff received treatment since 2010. Also, 2006 is the year plaintiff underwent neck surgery. Thus, Dr. Greaves' opinion that plaintiff's limitations have existed since 2006 when viewed in context was not so extraordinary for the ALJ to have fully discounted the remainder of his opinion without further discussion of the *limitations themselves*. After all, plaintiff was not seeking disability benefits retroactively. Rather, plaintiff's application stated a disability onset date of June 15, 2013. Thus, for purposes of determining disability, more important than when plaintiff's limitations dated back to, was the effect of those limitations on plaintiff's ability to work going forward. As such, this order finds it troubling that the ALJ focused solely on the *length* of the limitations, while ignoring the *actual limitations* that Dr. Greaves opined existed in 2013.

Again, the ALJ had the burden of providing specific and legitimate reasons for rejecting Dr. Greaves' assessed limitations. Having done so based solely on a faulty premise — that a physician cannot assess a patient's limitations to have existed for a period for which the physician did not himself provide care — the ALJ failed to meet that burden here.

*Second*, the ALJ's reasoning does not apply to Dr. Greaves' 2014 medical letter which he rendered after one-year of treatment. In that letter, Dr. Greaves opined that plaintiff was "suffering from severe disabling neck pain," which he based on a recent x-ray report of plaintiff's neck (AR 351). Yet, there is no indication that the ALJ considered this opinion, much less that he gave reasons for rejecting it. Thus, the ALJ failed to give any reasons, yet alone specific and legitimate reasons for not adopting Dr. Greaves' secondary opinion.

Furthermore, the Commissioner's arguments that the ALJ properly discounted Dr. Greaves' opinion are entirely predicated on reasons that the ALJ himself did not provide. The reviewing court reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Commissioner contends the

8

"ALJ properly noted that Dr. Greaves' opinion was inconsistent with Plaintiff's admitted wide variety of daily activities." Not so. The ALJ mentioned plaintiff's daily activities — taking care of his personal hygiene, making simple daily meals, performing household chores, and going grocery shopping — to discredit *plaintiff testimony* regarding the frequency and persistence of his symptoms of fatigue and dizziness. Thus, contrary to the Commissioner's contention, the ALJ did not discuss why or how any of *Dr. Greaves' assessed limitations* were inconsistent with plaintiff's daily activities.

This distinction is important because plaintiff does not challenge the ALJ's decision to discredit plaintiff's own testimony on this appeal. Rather, he is challenging the ALJ's treatment of Dr. Greaves' opinion. These challenges are distinct and our court of appeals routinely analyzes them separately and under different rules. *See Lester v. Chater*, 81 F.3d 821 (9th Cir. 1995); *Tonapetyan v. Halter*, 242 F.3d 1144 (9th Cir. 2001); *Magallanes v. Bowen*, 881 F.2d 747 (9th Cir. 1989). Here, the ALJ's decision was dedicated almost entirely to discrediting plaintiff's testimony, which is again not the issue on appeal. To be sure, these inquiries can be related. For example, one way in which our court of appeals considers a treating physician's opinion properly discounted is when an ALJ's expressed reasoning for doing so was that a treating physician's opinion was based "to a large extent" on a claimant's self-reports, which the ALJ properly discredits. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). That is not, however, the scenario here. The ALJ did not expressly provide such reasoning, nor is there any indication that Dr. Greaves relied more heavily on plaintiff's description of his pain instead of his own independent observations.

Finally, the Commissioner points to portions of the 2014 x-ray report that show good alignment and solid bony fusion at the *C4-5* and *C5-6* levels. That same x-ray report, however, also revealed no "solid bony union at C6-7" with the possibility of loosened hardware at C7 from plaintiff's 2006 neck surgery (AR 408). Notwithstanding that the ALJ himself did not discuss plaintiff's stable fusions, normal findings at *C4-5* and *C5-6* are not specific and legitimate reasons to discount Dr. Greaves' opinion regarding plaintiff's severe pain as a result of loose

9

hardware at level *C7*. The ALJ therefore failed to provide specific and legitimate reasons in discounting the opinion of Dr. Greaves.

This order does not make any ruling on the ultimate issue of disability or plaintiff's residual functional capacity. Rather, it holds only that the ALJ did not follow the proper procedure — giving specific and legitimate reasons that are supported by substantial evidence — when he rejected Dr. Greaves' assessed functional limitations. *See Trevizo*, 871 F.3d at 675. Whether or not a proper weighing of Dr. Greaves' opinion on remand would yield the same conclusion that plaintiff is not disabled is for the ALJ to decide.[*]

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for summary judgment is **GRANTED IN PART** and defendant's cross-motion for summary judgment is **DENIED**. Judgment will be entered accordingly. This action is hereby **REMANDED** to the ALJ for further proceedings.

**IT IS SO ORDERED.**

Dated: May 16, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[*] Plaintiff devotes half his brief to the ALJ's treatment of examining physician, Dr. Kalman. To the extent comprehensible, plaintiff's point seems to be that the ALJ implicitly rejected part of Dr. Kalman's opinion and was therefore required to give specific and legitimate reasons for doing so. Contrary to plaintiff's contention, however, the ALJ adopted Dr. Kalman's uncontradicted intellectual functioning limitations into his RFC finding, and there is no indication that he rejected any part of said opinion. This order declines to find error in the ALJ's rationale for rejecting Dr. Kalman's opinion when there is no clear evidence that the ALJ rejected her opinion in the first place.